STATE OF CONNECITCUT *v.* RICHARD FONTAINE
(AC 32607)

Alvord, Espinosa and Pellegrino, Js.

Argued November 9, 2011—officially released March 13, 2012

*Joseph Visone*, special public defender, for the appellant (defendant).

*Timothy F. Costello*, assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Thomas M. DeLillo*, assistant state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. The defendant, Richard Fontaine, appeals from the judgment of the trial court, rendered following a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes (Rev. to 2005) § 14-227a and operating a motor vehicle with a suspended license in violation of General Statutes (Rev. to 2005) § 14-215 (c).[1] The defendant claims that (1) the evidence was insufficient to sustain his conviction for operating a motor vehicle while under the influence of intoxicating liquor, (2) the court improperly denied his motion in

---

[1] Additionally, as alleged in the second part of the information, the court found the defendant guilty of previously having been convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes (Rev. to 2005) § 14-227a (g).

limine to exclude testimony that the result of a horizontal gaze nystagmus test[2] was an indication of his intoxication and (3) the court delivered a deficient instruction to the jury concerning the crime of operating a motor vehicle while under the influence of intoxicating liquor. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Shortly after 9 p.m. on the evening of August 20, 2006, state police Troopers Mark Roberts and David Abely observed the defendant operating a moped along Route 12, a public roadway, in Lisbon. In a police cruiser operated by Roberts, the troopers followed the defendant for approximately one mile. Initially, they observed that the moped had a defective tail light. After the defendant stopped his vehicle, the troopers talked to him and administered field sobriety tests. After these encounters, the troopers determined that the defendant had operated the moped while under the influence of intoxicating liquor. At the time, the defendant's license was under suspension as a consequence of a prior conviction of driving while intoxicated. Additional facts will be set forth as necessary.

I

First, the defendant claims that the evidence was insufficient to sustain his conviction of operating a motor vehicle while under the influence of intoxicating liquor. We disagree.

In reviewing whether the evidence supported a conviction, "[w]e apply a two part test. First, we construe

---

[2] "The horizontal gaze nystagmus test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct." (Internal quotation marks omitted.) *State* v. *Popeleski*, 291 Conn. 769, 770 n.3, 970 A.2d 108 (2009).

the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Arthurs*, 121 Conn. App. 520, 524, 997 A.2d 568 (2010).

To obtain a conviction under § 14-227a in the manner alleged by the state, the state bore the burden of proving beyond a reasonable doubt that the defendant operated a motor vehicle, on a public highway and while the defendant was "under the influence of intoxicating liquor . . . ." General Statutes (Rev. to 2005) § 14-227a (a) (1). There is no dispute that the state presented evidence sufficient to satisfy the first two essential elements of the crime. To satisfy the third element, the state must demonstrate that, as a result of the consumption of intoxicating liquor or any drug, or both, the defendant "had become so affected in his mental, physical or nervous processes that he lacked to an appreciable degree the ability to function properly in relation to the operation of his vehicle." (Internal quotation marks omitted). *State* v. *Morelli*, 293 Conn. 147, 154, 976 A.2d 678 (2009).

The defendant claims that although the state presented evidence concerning the manner in which he performed field sobriety tests administered by the troopers, the state failed to establish adequately what was required to pass such tests and how such tests measured one's ability to operate a motor vehicle. The state, however, did not bear the burden of educating

the jury with regard to field sobriety tests, but of demonstrating that the defendant was intoxicated. On the basis of our review of the evidence in its entirety, we readily conclude that it supported a finding beyond a reasonable doubt that the defendant was intoxicated, as charged.

The state presented evidence from the troopers that they followed the defendant for approximately one mile as he operated his moped on Route 12, during which time he drove in an erratic manner, crossing over the white line on the right side of the roadway on three occasions. When the troopers encountered the defendant after he pulled into a parking lot, the defendant's eyes appeared to be bloodshot and glassy, he smelled of liquor and his clothing was disheveled. Thereafter, he was uncooperative in his interactions with the troopers. Repeatedly, he asked for instruction with regard to the field sobriety tests administered by the troopers. He was unable to complete a walk and turn test, and he refused to complete a horizontal gaze nystagmus test and a one leg stand test. He refused to submit to a breathalyzer test. The defendant exhibited nystagmus[3] during a partial administration of a horizontal gaze nystagmus test. Furthermore, at the outset of his interaction with the troopers, the defendant made statements to the troopers that clearly evidenced his consciousness of guilt, that he should not have been operating the moped.[4] On the basis of this evidence and the rational

---

[3] "Nystagmus is the inability of the eyes to maintain visual fixation on a stimulus when the eyes are turned to the side, often resulting in lateral jerking of the eyeball." (Internal quotation marks omitted.) *State* v. *Balbi*, 89 Conn. App. 567, 570–71, 874 A.2d 288, cert. denied, 275 Conn. 919, 883 A.2d 1246 (2005).

[4] During his examination by the state, Abely testified that when Roberts asked the defendant for his operator's license, the defendant replied, "[y]ou don't need a license to operate a moped . . . give me a break, I just got out on a DWI offense . . . I'll keep the bike here, I'll walk home, my brother lives in Jewett City and I'll come back and get it." Abely stated: "He just wanted us to basically forget about it, let him walk home or walk the bike home, and leave it at that."

inferences consistent with guilt drawn therefrom, we conclude that the evidence was sufficient to sustain the defendant's conviction of operating a motor vehicle while under the influence of intoxicating liquor.

## II

Next, the defendant claims that the court improperly denied his motion in limine to exclude testimony that the result of a horizontal gaze nystagmus test administered to him by Roberts was an indication of his intoxication. We disagree.

Prior to trial, the defendant filed a written motion to exclude "[horizontal gaze nystagmus] testing testimony." The motion was related to a horizontal gaze nystagmus test administered by Roberts during the roadside investigation. The defendant argued that testimony related to the test was inadmissible because Roberts failed to administer the test properly. The state argued that the evidence would demonstrate that Roberts began to administer the test, but the defendant refused to complete it and that the state should be permitted to present Roberts' observations to the jury. The court ruled that Roberts could testify with regard to what occurred during the partially completed test, and that the weight to be attributed to the evidence was a matter for the jury's consideration.

On appeal, the defendant does not claim that the court improperly permitted the state to present *any* evidence concerning the horizontal gaze nystagmus test. Rather, he argues that, because the test was administered improperly, Roberts' testimony "that the nystagmus observed in the eyes of the defendant was the result of his intoxication" was inadmissible under the requirements set forth in *State* v. *Balbi*, 89 Conn. App. 567, 573–74, 874 A.2d 288, cert. denied, 275 Conn. 919, 883 A.2d 1246 (2005).

A close review of Roberts' testimony reveals that it is at odds with the defendant's claim. As relevant, Roberts testified that he began to test the defendant's horizontal gaze and observed "a lack of smooth pursuit [with his eyes]," or nystagmus. Thereafter, the defendant became uncooperative and would not complete the test. The prosecutor asked Roberts, based on his training and experience, to identify one of the causes of nystagmus, to which Roberts replied, "Intoxication." Subsequently, during redirect examination, Roberts testified that "the type of nystagmus" he observed was the same type of nystagmus that he had observed in other individuals who were intoxicated. Consistent with the evidence, the prosecutor did not argue that Roberts had fully administered a horizontal gaze nystagmus test, that the defendant had failed such test or that the test yielded a conclusion of intoxication. Instead, the prosecutor argued that the nystagmus observed by Roberts was one of several factors that supported a finding of intoxication.[5]

On the basis of the foregoing, we conclude that the state did not elicit, nor did the court admit, the testimony described by the defendant. Accordingly, we conclude that the defendant's claim is meritless.

### III

Finally, the defendant claims that the court delivered a deficient instruction to the jury concerning the crime of operating a motor vehicle while under the influence

---

[5] For example, during closing argument, the prosecutor stated: "I'm not here to tell you that . . . the horizontal gaze nystagmus test was a valid test. And the evidence is that the defendant stared straight ahead after beginning to perform the test. And the officer told you it was invalid. I'm not here claiming that he took the horizontal gaze test and failed it. What I am saying is that there is evidence of nystagmus as a result of the officer's observations at the beginning of the test, and that evidence is a small piece of evidence that you put together with all of the other pieces and reasonably infer that the defendant was intoxicated."

of intoxicating liquor. Specifically, the defendant claims that the court did not instruct the jury that one of the essential elements of the crime, as charged in this case, was that the operation of the motor vehicle occurred on a public highway.[6] See General Statutes (Rev. to 2005) § 14-227a (a).

The defendant acknowledges that he did not preserve this claim of instructional error and seeks review of the claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The claim is reviewable under *Golding* because the record is adequate to review the court's instructions, and a claim that the court omitted an instruction concerning an essential element of the crime is of constitutional dimension. Nonetheless, it is well settled that waived claims cannot satisfy *Golding*'s third prong. See, e.g., *State* v. *Darryl W.*, 303 Conn. 353, 367–68, 33 A.3d 239 (2012); *State* v. *Hampton*, 293 Conn. 435, 448–49, 978 A.2d 1089 (2009).

The record reflects that, on June 8, 2010, the court provided counsel with a copy of its draft jury charge, which contained the instruction at issue. The court afforded counsel a meaningful opportunity to review the draft charge overnight and, the next day, solicited comments thereon during an on the record charging conference. During that charging conference, the court, referring to the page numbers in its draft charge where the instruction appeared, specifically asked counsel if there were any objections to its "operating under the influence" instruction. Defense counsel replied in the negative. After the court delivered its charge to the jury, it asked counsel if there were any objections to the charge. Defense counsel replied, "No, Your Honor, thank you."

In light of this conduct by defense counsel, we readily conclude that the defendant implicitly waived any

---

[6] At trial, the state presented uncontroverted evidence that Route 12 was a public highway.

objection to the instruction as given. See *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011). Accordingly, the defendant cannot prevail under *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.